UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------x
UNITED STATES OF AMERICA     :
      :
     v.     :     Criminal № 3:02cr341 (EBB)
      :
DANIEL TORRES-PEREZ,     :
      :
     Defendant.   :     JUNE 19, 2006
------------------------------------------------------x

## MEMORANDUM IN AID OF SENTENCING

**1.    INTRODUCTION**

This memorandum is respectfully submitted on behalf of defendant Daniel Perez-Torres to assist the Court in the difficult task of imposing a fair and appropriate sentence in this case. Mr. Perez-Torres pleaded guilty and awaits sentencing before Your Honor on a one count substitute Information charging him with conspiracy to remove, alter or make illegible the so-called "Monroney" labels required to be placed on new automobiles, in violation of 18 U.S.C. §371 and 15 U.S.C. §1233(c).  He is currently scheduled to be sentenced on June 28, 2006.

Notwithstanding what might be perceived as the relative lack of gravity of the violation, we do not intend to minimize the seriousness of Mr. Perez-Torres' offense.  Rather, we wish to present mitigating factors of primary importance to the Court in fashioning a sentence that is consistent with the interests of justice.

This memorandum is meant to supplement the Probation Department's Presentence Report ("PSR"), to provide the Court with some additional insight into Mr. Perez-Torres'

-2-

background, and to bring to the Court's attention extenuating circumstances militating a sentence

of probation.[1]

**2.      18 U.S.C. §3553(b)**

As the Court is well aware, a threshold instruction of 18 U.S.C. §3553 is, in pertinent

part, that:

> "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed –
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(c)** to protect the public from further crimes of the defendant; and
>>
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[1] In this case the United States and the defendant have stipulated that the substantive offense of 15 U.S.C. §1233(c) is not covered by a specific sentencing guideline and that, under the commentary to U.S.S.G. §2X1.1, application note 3, the Court must refer to U.S.S.G. § 2X5.1. The parties have further stipulated that there is no sufficiently analogous guideline and that, under U.S.S.G. §2X5.1, the provisions of 18 U.S.C. §3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable. Although the Court is not bound by the parties' stipulation that the provisions of 18 U.S.C. §3553(b) shall control, it is respectfully suggested that they should in the instant case. Indeed, when the "Sentencing Guideline calculation" was made by the Probation Department, it resulted in a Total Offense Level of 4. PSR ¶¶ 26-34.

-3-

Taking these criteria in order, it is apparent that the defendant's situation is ideally suited for a sentence of minimally supervised probation.

### a.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Ordinarily, it would be at this point that counsel would attempt to either supplement or clarify the assessment of the defendant in the Probation Department's Presentence Report ("PSR").  Gratifyingly, that does not appear necessary in this case.

The Probation Officer has, of course, characterized the charged offense and plea agreement correctly.  He has also correctly characterized the defendant's role in the overall offense.  However, much more importantly, the PSR provides the Court with an accurate – even insightful – portrayal of the defendant.[2]  For example, the defendant's role in the overall conspiracy is described – correctly – at ¶¶ 15-16 of the PSR.  In his personal statement to the Probation Officer (which, it bears mentioning, was prepared exclusively by the defendant), the defendant makes it abundantly clear how sorry he is for being involved in the criminal conduct, and explains – without excuse – how it happened.  PSR, ¶¶ 17-19.

### b.    The Need for the Sentence Imposed

     i.     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

     ii.     to afford adequate deterrence to criminal conduct;

     iii.     to protect the public from further crimes of the defendant; and

     iv.     To provide the defendant with needed educational or vocational training,

---

[2]  Rather than burden this memorandum with an unnecessary repetition of the PSR, familiarity of which by the Court is assumed, the brief comments in the memo will simply cite the relevant portions of the PSR.

-4-

medical care, or other correctional treatment in the most effective manner;

As alluded to above, it would be gratuitous, and perhaps presumptuous, to suggest that Mr. Perez' offense was not serious and, therefore, his sentence should be lenient. Violation of the law is wrong and is serious. Some violations, however are, by definition, more or less serious than others. In the scheme of things, the negotiated plea is to an offense that is obviously less serious than many others. However, that portion of §3553 does not end there. It speaks of "promot[ing] respect for the law, and [] provid[ing] just punishment for the offense" as well.

Again, the PSR accurately describes the defendant's existing respect for the law and strongly suggests that a sentence of minimally supervised probation is appropriate. PSR, ¶¶ 22-23. [3]

The defendant has never been in trouble with the law before. PSR ¶ 35. Insofar as whatever punishment is imposed will constitute a deterrence from further criminal conduct, it is respectfully suggested that that objective has already been accomplished. There is virtually no risk that Mr. Perez will offend again. PSR ¶ 98. Consequently, the need to "protect the public" from Mr. Perez is basically academic.

The next criterion in §3553 for the court's consideration is:

"To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Once again, as reflected in the PSR, Mr. Perez is already involved in a medical and educational regimen that fulfills this factor. PSR, ¶¶ 96-98

---

[3] By way of example, the defendant has already paid the agreed upon restitution amount and assessment to the Clerk of the Court.

-5-

More important than Mr. Perez' satisfaction of this consideration for sentencing however, is the context in which it occurs. As the Court will, hopefully, recognize, it is not surprising that the defendant is striving for rehabilitation without being required to by the Court.

The product of an intact and loving family, Mr. Perez attended school in Puerto Rico like any other child of such a devoted family. He was, by all accounts, a good student and a good son. ¶¶ 37-42. But simply being a "good student and good son" was apparently not enough for Danny Perez.

In 1987, at 18, he enlisted in the United States Marine Corps. To him, this provided another way to improve himself while serving his country. He distinguished himself throughout his training. But, unfortunately for him, his career in the military involved more than simply being a good soldier. For him it involved, what the PSR aptly refers to as exposure to the "horrors of warfare." ¶ 96.

After extensive and varied training – all of which he completed successfully – the defendant was assigned to more than one theater of actual combat operations. He served in Operation Desert Shield; he served in Operation Desert Storm; he served in Task Force Grissly and Task Force Kipper during Desert Storm in Kuwait and in Operation Uphold Democracy in Haiti. His performance in each and every one of these combat assignments was recognized by his country. He was decorated numerous times and applauded by services other than the Marine Corps in which he served. ¶¶ 76-78.

Although not "wounded" in the usual sense, Mr. Perez suffered real wounds – real and potentially emotionally crippling. His combat-related Post Traumatic Stress Disorder has been directly attributed to his service in the first Gulf War and in Haiti. ¶¶ 62-64. Notwithstanding

-6-

his condition, he maintains an optimistic and altruistic attitude and looks forward to the time

when he can use his own negative experience for the greater good.  ¶ 65.

Perhaps most impressive about Danny Perez, however, is not the military service, the

education, the lack of criminal history or even the minimal role he played in the offense.  Perhaps

the most impressive thing about him is his devotion to family and his dedication and loyalty to

those close to him.

As pointed out in the PSR (¶¶ 37-60), he maintains a good and healthy relationship with

his family and, significantly, with his former wife and children.  Where lesser men would have

simply written an unsuccessful marriage off as a chapter to forget, Mr. Perez has accepted that

the failure of the marriage was, in large measure, a function of his other problems, and remained

devoted and available to his family.  Remarkably, Mr. Perez has not only been there for his own

natural children, he raised a son that his wife had previously as his own, when the boy's natural

father disappeared from the scene.

Mr. Perez continues to work hard at overcoming adversity.  Despite illness and depres-

sion, Post Traumatic Stress Disorder, not to mention the instant case, he maintains a positive

attitude and is committed to "giving back."  (PSR, ¶¶ 96-98

**3.    COOPERATION**

Finally, when confronted with the fact that his conduct was illegal.  Mr. Perez ultimately

chose to cooperate with the United States in its prosecution of his co-defendants.

It would be disingenuous to suggest that the hope that his cooperation would place him in

a better light for sentencing was not part of his motivation.  Of course it was.  However, it was

not his only motivation.  He is sincerely contrite and ashamed.  His cooperation was also an

-7-

attempt on his part to vindicate his wrongdoing and reclaim the self-esteem of which he was once

proud – and of which he hopes to be proud again.

    If ever there was a case to be made for compassion and leniency, this is that case.


                        RESPECTFULLY SUBMITTED,
                        DANIEL PEREZ-TORRES


                        By:   /s/   *Ethan Levin-Epstein*
                        Ethan Levin-Epstein (Federal Bar No. ct01566)
                        Garrison, Levin-Epstein, Chimes & Richardson, PC
                        405 Orange Street
                        New Haven, CT 06511
                        Tel:  (203) 777-4425
                        Fax: (203) 776-3965
                        E-mail: elevin-epstein@garrisonlaw.com

                        Attorney for the Defendant

## CERTIFICATION

This is to certify that a true and accurate copy of the within and foregoing

Memorandum In Aid of Sentencing was sent by First Class mail, postage prepaid, this 19th day

of June, 2006, to:

Michael McGarry, Esq.
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
157 Church Street (23rd floor)
New Haven, CT 06510

Mr. Otto Rothi
United States Probation Officer
United States Probation Department
450 Main Street
Hartford, CT 06103


      /s/ *Ethan Levin-Epstein*

        Ethan Levin-Epstein