UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 3:02CR341(EBB) |
| | : |
| DARIEL PEREZ TORRES | : June 27, 2006 |

**SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in aid of sentencing, which is currently scheduled for Wednesday, June 28, 2006 at 10:00 a.m. On March 16, 2005, DARIEL PEREZ TORRES entered a plea of guilty to a one count substitute information. The PSR calculates the defendant's adjusted offense level to be a level 4 and defendant's Sentencing Guidelines range to be 0 to 6 months' incarceration and a fine range of $500 to $1,000.[1] The Government agrees with the Guideline calculation.

This memorandum briefly recounts the factual background to this matter. *See* Part I. Second, it outlines the procedure to be followed in sentencings in the wake of *United States v. Booker*, 125 S. Ct. 738 (2005), and respectfully recommends that the Court sentence the defendant within his Sentencing Guidelines range. *See* Part II. Third, it calculates the defendant's sentencing range under the U.S. Sentencing Guidelines. *See* Part III. Finally it addresses restitution. *See* Part IV.

**I.  Background to Offense Conduct**

The Government agrees with the description of the offense conduct as outlined in the PSR, and respectfully requests this Court to adopt the factual findings of the PSR.

In brief, and as stipulated by the parties, at various times in 2001 and 2002, the defendant was employed as a salesperson by Shoreline Motors Corporation, which did business as

---

[1] In Paragraph 90, the PSR calculates the defendant's fine range to be $500 to $1,000 pursuant to Guideline Section 5E1.2(c)(4); it appears that the fine range is $250 to $1,000. *See* U.S.S.G. § 5E1.2(c)(3).

Shoreline Mitsubishi, an automobile dealership that was located at 165 North Main Street, Branford, Connecticut. Shoreline Mitsubishi was in the business of selling new Mitsubishi automobiles and used automobiles to the public ("customers").

Shoreline Mitsubishi's sales strategy, as implemented by General Manager Angel Hernandez, was not to focus the customer on the cash selling price of a car, but instead to focus on the prospective monthly payment, assuming the customer was approved for financing for his or her car purchase. Pursuant to Angel Hernandez's instructions, the defendant focused his customers on the monthly payments they could make. The defendant was aware that Shoreline Mitsubishi's policy often sold new cars to their customers for amounts substantially above the Manufacturer's Suggested Retail Price ("MSRP"). By focusing on the monthly payment and not the cash selling price, the dealership made it more likely that the customers would agree to pay amounts well above MSRP.

Another way in which the dealership facilitated its charging customers amounts significantly above MSRP, was to prevent the customers from obtaining the "Monroney" labels for their cars. A Monroney label contains various items of information about the car to which it is affixed, including the car's MSRP. During his employment at Shoreline Mitsubishi, the defendant attended one or more meetings at which Angel Hernandez advised the sales staff that he (Hernandez) had instructed the people who cleaned the cars that, when the cars were cleaned prior to delivery the customers, they should remove the Monroney labels from the cars. The defendant understood from this that the persons cleaning the cars would remove the Monroney labels from the cars, and that the idea was to have the customers leave the dealership without receiving the Monroney labels for the cars they had purchased. The defendant's understanding was that at least one of the reasons this was done was to avoid any problems or controversy with

2

the customers in relation to the purchase price of the cars.  That is, the defendant understood that, if the customer retained the Monroney label, the customer could more easily ascertain that Shoreline Mitsubishi had charged him or her an amount substantially above MSRP.  Thus, by removing the Monroney labels, the deals were more likely to go forward without incident than if the labels had not been removed.  Defendant Perez understood this was the dealership's policy and practice during the period that he was a salesperson at Shoreline Mitsubishi, including December 11, 2001, the date on which he sold a car to I.S.#1.  The defendant understood and expected that, at the time I.S.#1 left Shoreline Mitsubishi with the car he purchased, the cleaning staff had removed the Monroney label from the vehicle and that I.S.#1 consequently would not have the Monroney label which originally had been affixed to that car.

II.     **Sentencing in the Wake of *Booker***

In United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  See Booker, 125 S. Ct. at 755.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  Id. at 757.  This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to review by the Court of Appeals for "reasonableness."  Id. at 766; see also United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

In the wake of Booker/Fanfan and Crosby, this Court must make a calculation under the

existing Sentencing Guidelines, and then consider the final Guideline calculation when determining the sentence to be imposed. See Booker, 125 S. Ct. at 767 (holding that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing"); Crosby, 397 F.3d at 111-12. The Second Circuit has further instructed that "that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after Booker/Fanfan, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., Booker, 125 S. Ct. at 761 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); Crosby, 397 F.3d at 114 ("We have every confidence that ... [district courts'] sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the

considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent truly unusual circumstances. Accordingly, a sentence within the Guideline range is presumptively reasonable, and accommodates the congressional purpose, affirmed by the Supreme Court, of imposing fair sentences which are uniform to the extent possible. The Government anticipates that only sentences outside the Guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate, absent truly extraordinary circumstances.

The Government respectfully recommends that the Court sentence the defendant within his applicable Sentencing Guidelines range. The Government submits that a sentence within the defendant's Sentencing Guidelines range results in a sentence that is "reasonable" and fully accords with the various factors set forth in 18 U.S.C. § 3553(a).

### III.    The Defendant's Guidelines Calculation

As set forth in the parties' plea agreement, the Government and the defendant stipulated and agreed that the substantive offense of 15 U.S.C. § 1233(c) is not covered by a specific

sentencing guideline and that, under the commentary to U.S.S.G. § 2X1.1, application note 3, the Court should refer to U.S.S.G. § 2X5.1.  The parties further stipulated that there is no sufficiently analogous guideline and that, under U.S.S.G. § 2X5.1, the provisions of 18 U.S.C. § 3553(b) should control, excepting that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline.

The defendant's applicable Sentencing Guidelines range is calculated as follows:  the defendant's base offense level is 6.  Two levels are subtracted under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  The defendant's criminal history was calculated to be in Criminal History Category I.  A total offense level of 4 with a Criminal History Category I results in a sentencing range of 0-6 months' imprisonment (sentencing table) or equivalent period of home confinement and a fine range of $500 to $1,000 (U.S.S.G. § 5E1.2(c)(4)).

**IV.    Restitution**

The government and the defendant agreed to recommend to the Court that the Court order the defendant to make restitution to Mr. South, the individual referenced above as I.S.#1, of $1,578.50.  Mr. South was called by the government as a witness and testified at trial.

**VI.    Conclusion**

       For the foregoing reasons, the Government respectfully requests that the Court sentence the defendant within his applicable Guidelines range.

                         Respectfully submitted,

                         KEVIN J. O'CONNOR
                         UNITED STATES ATTORNEY

                         __/s/_____
                         MICHAEL S. McGARRY
                         ASSISTANT UNITED STATES ATTORNEY
                         U.S. Attorney's Office
                         157 Church Street, 23rd Floor
                         New Haven, CT 06510
                         TEL. (203) 821-3700
                         Federal Bar No. ct25713
                         Email: michael.mcgarry@usdoj.gov

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was faxed and mailed, postage prepaid, this 27th day of June 2006, to the following:

Ethan Levin-Epstein, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

Otto Rothi
U.S. Probation Officer
U.S. Probation Office
450 Main Street, Room 735
Hartford, CT 06103

/s/
MICHAEL S. McGARRY
ASSISTANT U.S. ATTORNEY